UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION – BOSTON

| | |
|---|---|
| BI 40 LLC<br><br>  Plaintiff,<br>v.<br><br>TEWKSBURY LIVING GROUP, LLC,<br>EC TEWKSBURY, LLC and<br>MH TEWKSBURY OPERATING, LLC,<br><br>  Defendants. | CASE NO. _____ |

**VERIFIED COMPLAINT**

Plaintiff, BI 40 LLC (the "Lender") by and through its undersigned counsel, files this Verified Complaint and Request for Appointment of Receiver against Tewksbury Living Group, LLC (the "Operator Defendant"), EC Tewksbury, LLC (the "Real Estate Defendant"), and MH Tewksbury Operating, LLC (the "Staffing Defendant" and, together with the Real Estate Defendant and Operator Defendant, the "Defendants") and states as follows:

**INTRODUCTION**

1. This is an action for breach of contract and for the appointment of a receiver to operate an impaired memory facility known as "Wood Haven Senior Living" (hereinafter, "Wood Haven" or the "Facility") with a place of business at 2580 Main Street, Tewksbury, Massachusetts (the "Real Estate"). Wood Haven operates as a 64-bed facility, specializing in providing care for residents with Alzheimer's and other forms of dementia. The Real Estate Defendant owns the Real Estate and is party to a lease with the Operator Defendant. The Operator Defendant is the counterparty to the agreements with Wood Haven's residents to provide accommodations and patient care (the "Residency Agreements") and a contract with the Commonwealth of Massachusetts to provide services under MassHealth's Program for All-inclusive Care for the

Elderly (PACE).  The Operator Defendant additionally owns substantially all the tangible and intangible property associated with Wood Haven, including the licenses.  The Staffing Defendant employs the individuals who service the Facility and provide care to the residents.

2. Lender has filed this action for relief against the Defendants and has contemporaneously moved for the appointment of the Receiver (defined below) because: (i) the Defendants are in default under their Loan Agreement (defined below) with the Lender; (ii) as of June 2021, the Executive Office of Elder Affairs ("EOEA") has notified the Operator Defendant that the Facility is out of compliance with the Commonwealth of Massachusetts's applicable standards for assisted living facilities, 651 CMR 12.00 *et seq.* (the "Regulations"); (iii) the EOEA has required the Operator Defendant to cease enrollment of new residents until it completes several corrective actions and the EOEA determines that the Facility is in compliance with the Regulations (the "Enrollment Moratorium"); and (iv) the Enrollment Moratorium is preventing the Operator Defendant from achieving the census necessary to generate sufficient revenue to cover its operating expenses and satisfy its obligations to the Lender.

3. Despite Lender's forbearance on Defendant's defaults for more than a year, Defendants have been unable to improve the census at the Facility.  In fact, conditions have deteriorated in the last 6 months, putting the resident population at risk and jeopardizing the collateral securing Defendants' indebtedness to Lender.

4. Defendants are unable to satisfy their obligations to Lender and lack sufficient capital to continue operating Wood Haven without substantial financial support.  Without sufficient liquidity support, the Operator Defendant will be unable to acquire necessary goods, including food deliveries, and maintain sufficient staffing levels at the Facility, let alone meet the EOEA's requirements to lift the Enrollment Moratorium.  The discontinuity of goods and services will negatively affect Wood Haven's residents.

5. The parties anticipate that following its appointment, the Receiver shall file a motion seeking approval of a line of credit facility, established by the Lender and secured by senior and paramount liens upon substantially all the Defendants' assets.

6. Through this action, the Lender seeks the appointment of a receiver for the Property (defined herein) with the authority to take possession of, preserve, manage and operate the Property and secure all collateral, including the collection of the Operator Defendant's accounts receivable, in order to ensure that there is no disruption in the provision of care to Wood Haven's residents during the pendency of this lawsuit.

## PARTIES

7. Plaintiff Lender is a Florida limited liability company with an address of 2601 S. Bayshore Drive, Suite 1400, Miami, Florida 33133.

8. The Operator Defendant is a Massachusetts limited liability company with an address of 2580 Main Street, Tewksbury, Massachusetts 01876.

9. The Real Estate Defendant is a Delaware limited liability company with an address of 2580 Main Street, Tewksbury, Massachusetts 01876.

10. The Staffing Defendant is a Delaware limited liability company with an address of 6931 Arlington Road, Bethesda, Maryland 20814.

## JURISDICTION AND VENUE

11. The Court has personal jurisdiction over Defendants because they have conducted and continued to conduct business in Massachusetts and own real and personal property located within the Commonwealth of Massachusetts.

12. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of different States.

13. Venue is proper under 28 U.S.C. § 1391(b)(2).

**FACTS**

**A. Relationship Between Defendants.**

14. The Operator Defendant is licensed to accommodate and care for Wood Haven's residents and is a partner of MassHealth under the PACE contract. In addition, the Operator Defendant owns substantially all of the fixtures, equipment, furniture, goods, and personal property located at the Real Estate and substantially all of the intangible property, including cash, accounts receivable, deposit accounts, intellectual property, trade secrets, proprietary information, books and records, and vendor contracts associated with Wood Haven (these interests, together with the Real Estate, the "Property"). The Staffing Defendant owns 50% of the membership units in the Operator Defendant. EC Senior Tewksbury Management, LLC ("EC Senior") owns the remaining 50%.

15. The Real Estate Defendant owns the Real Estate. It leases the Real Estate to the Operator Defendant pursuant to that Lease dated March 28, 2019 between the parties, as amended by that First Amendment to Lease dated December 14, 2020 (the "Lease"). A true and accurate copy of the Lease is attached hereto as **Exhibit 1**.

16. On information and belief, the Real Estate Defendant has a separate ownership group from the Operator and Staffing Defendant, although MeriStar Holdings LLC, indirectly holds ownership interests in all the Defendants. A chart showing the organization structure of the corporate enterprise that owns and manages Wood Haven through the Defendants is attached as Exhibit B to the Loan Agreement (defined below).

17. Prior to August 2021, Meridian Senior Living LLC ("Meridian") managed the daily operations of Wood Haven, including the supervision of resident care under that certain Management Agreement dated March 29, 2019 between Meridian and Operator Defendant (the "Meridian Agreement"). Based in Bethesda, Maryland, Meridian operates approximately 50

senior housing communities in the United States and Asia. Meridian is a guarantor of Lender's loan along with an individual, David Scharf. Mr. Scharf manages Defendants and has an ownership stake in the Real Estate Defendant (Meridian and Mr. Scharf together, the "Guarantors").

**B. Origin of the Loan.**

18. On or about March 29, 2019, Lender loaned Real Estate Defendant the aggregate principal amount of $6,800,000.00 (the "Original Loan") pursuant to that certain Loan Agreement between EC Tewksbury LLC and BI 40 LLC (the "Loan Agreement") and evidenced by that certain Promissory Note of even date (the "Note"). True and accurate copies of the Note and Loan Agreement are attached hereto as **Exhibit 2** and **Exhibit 3**, respectively. Capitalized terms not defined herein shall have the meanings set forth in the Loan Agreement.

19. The maturity date of the Original Loan was 24 months from the Closing Date, or March 29, 2021. *See* Loan Agreement, § 1.lviii.

20. To secure its performance under the Loan Agreement, Real Estate Defendant executed the following documents:

   a. That certain Mortgage, Assignment of Leases and Rents, and Security Agreement, granting Lender a first mortgage in the Real Estate and a security interest in all Real Estate Defendants' assets including rents and its then existing and future arising accounts receivable (the "Mortgage"), a true and accurate copy of which is attached hereto as **Exhibit 4**;

   b. That certain Assignment of Leases and Rents, assigning Real Estate Defendant's interest in the Lease with Operator Defendant to Lender (the "Assignment of Leases and Rents"), a true and accurate copy of which is attached hereto as **Exhibit 5**; and

   c. That certain Assignment of Agreements Affecting Real Estate in favor of Lender (the "Assignment of Agreements", a true and accurate copy of which is attached hereto as **Exhibit 6**.

21. As further security for the Original Loan:

a. Operator Defendant executed that certain Assignment and Subordination of Management Agreement, assigning its rights under the Meridian Agreement to Lender, a true and accurate copy of which is attached hereto as **Exhibit 7**;

b. Operator Defendant executed that certain Subordination, Non-Disturbance and Attornment Agreement with respect to its rights as tenant under the Lease, in favor of Lender, a true and accurate copy of which is attached hereto as **Exhibit 8**;

c. Guarantors executed that certain Limited Guaranty, a true and accurate copy of which is attached hereto as **Exhibit 9**; and

d. Real Estate Defendant's corporate parent, Tewksbury Holdings, LLC ("Tewksbury Holdings"), executed that certain Pledge Agreement, granting lender a security interest in 100% of the membership interests in Real Estate Defendant, a true and accurate copy of which is attached hereto as **Exhibit 10**.

22. Contemporaneous to the Lender's funding of the Original Loan, Tewksbury Holdings made a capital investment in Real Estate Defendant in the amount of $4,250,000.00. Pursuant to that certain Subordination Agreement between Tewksbury Holdings and Lender, Tewksbury Holdings acknowledge that this debt was subordinate to all "indebtedness of every kind, nature and description now or at any time hereafter owing by [Real Estate Defendant] to Lender." A true and accurate copy of the Subordination Agreement is attached hereto as **Exhibit 11**.

C. **Forbearance Agreement.**

23. Approximately one year after entering into the Loan Agreement, the Real Estate Defendant defaulted on its obligations to Lender when it failed to make the April 2020 interest payment due under the Note and violated certain financial and operating covenants in the Loan Agreement during the first fiscal quarter of 2020.

24. The Lender subsequently entered into that certain Forbearance Agreement dated December 14, 2020, with Real Estate Defendant, Operator Defendant, Tewksbury Holdings,

a. Operator Defendant executed that certain Assignment and Subordination of Management Agreement, assigning its rights under the Meridian Agreement to Lender, a true and accurate copy of which is attached hereto as **Exhibit 7**;

b. Operator Defendant executed that certain Subordination, Non-Disturbance and Attornment Agreement with respect to its rights as tenant under the Lease, in favor of Lender, a true and accurate copy of which is attached hereto as **Exhibit 8**;

c. Guarantors executed that certain Limited Guaranty, a true and accurate copy of which is attached hereto as **Exhibit 9**; and

d. Real Estate Defendant's corporate parent, Tewksbury Holdings, LLC ("Tewksbury Holdings"), executed that certain Pledge Agreement, granting lender a security interest in 100% of the membership interests in Real Estate Defendant, a true and accurate copy of which is attached hereto as **Exhibit 10**.

22. Contemporaneous to the Lender's funding of the Original Loan, Tewksbury Holdings made a capital investment in Real Estate Defendant in the amount of $4,250,000.00. Pursuant to that certain Subordination Agreement between Tewksbury Holdings and Lender, Tewksbury Holdings acknowledge that this debt was subordinate to all "indebtedness of every kind, nature and description now or at any time hereafter owing by [Real Estate Defendant] to Lender." A true and accurate copy of the Subordination Agreement is attached hereto as **Exhibit 11**.

C. **Forbearance Agreement.**

23. Approximately one year after entering into the Loan Agreement, the Real Estate Defendant defaulted on its obligations to Lender when it failed to make the April 2020 interest payment due under the Note and violated certain financial and operating covenants in the Loan Agreement during the first fiscal quarter of 2020.

24. The Lender subsequently entered into that certain Forbearance Agreement dated December 14, 2020, with Real Estate Defendant, Operator Defendant, Tewksbury Holdings,

Case 1:21-cv-11904-PBS Document 1 Filed 11/24/21 Page 6 of 19

6

Meridian, and Mr. Scharf. A true and accurate copy of the Forbearance Agreement is attached hereto as **Exhibit 12**.

25. Pursuant to the Forbearance Agreement, Defendants acknowledged their breaches of the Loan Agreement. Lender agreed to forbear from exercising its remedies through October 1, 2021 (the "Forbearance Expiration Date") in exchange for the following agreements and transactions:

   a. Lender advanced $1,000,000.00 to fund Operator Defendant's working capital needs, establish a tax escrow for Real Estate Defendant's real estate tax obligations associated with the Real Estate, and to establish an interest reserve to cover interest payments on the Original Loan and additional advance (collectively, the "Loan");

   b. Real Estate Defendant executed that certain Amended and Restated Promissory Note dated December 14, 2020 promising to pay Lender the principal sum of $7,800,000.00 (the "Amended Note"), a true and accurate copy of which is attached hereto as **Exhibit 13**;

   c. Real Estate Defendant executed that certain First Amendment to Mortgage, Assignment of Leases and Rents, and Security Agreement, increasing the amount of principal indebtedness secured by the Real Estate to $7,800,000.00 (the "Mortgage Amendment"), a true and accurate copy of which is attached hereto as **Exhibit 14**;

   d. Operator Defendant granted Lender a security interest in substantially all of its assets, including accounts receivable, rents, cash, contractual rights, goods, fixtures, general intangibles (the "Property"), pursuant to that certain Security Agreement (the "Operator Security Agreement"), a true and accurate copy of which is attached hereto as **Exhibit 15**;

   e. The Staffing Defendant and EC Senior executed Pledge Agreements granting Lender a security interest in 100% of the membership interests in Operator Defendant (the "Operator Pledge Agreements"), true and accurate copies of which are attached hereto as **Exhibit 16**;

   f. Real Estate Defendant delivered into escrow with Lender's counsel, a Deed-in-Lieu of Foreclosure in favor of Lender with respect to the Real Estate, a true and accurate copy of which is attached hereto as **Exhibit 17**;

26. Pursuant to the Forbearance Agreement, Real Estate Defendant agreed to pay off all indebtedness owed to Lender by October 1, 2021.[1] *See* Forbearance Agreement, § 2.4.1(2).

27. Pursuant to the Forbearance Agreement, Operator Defendant became a co-borrower on the Loan and Loan Agreement. *See id.* § 2.4.1(4). To secure its obligations, Operator Defendant executed the Operator Security Agreement.

28. The Forbearance Agreement provides that upon the occurrence of the Forbearance Expiration Date, "the rights and obligations of the parties will, at Lender's discretion, resume being governed by the terms and conditions of the Loan Documents . . . ." *See id.* § 2.6.

**D. The Loan Documents and Lien Priority**

29. To perfect its interests in the Real Estate and other property of Defendants, Lender caused the following documents to be recorded: (i) the Mortgage, recorded at the Middlesex North Registry of Deeds as Document #12202, Book 32874, Page 102; (ii) the Assignment of Leases and Rents, recorded at the Middlesex North Registry of Deeds as Document #12203, Book 32874, Page 130; and (iii) the Mortgage Amendment, recorded at the Middlesex North Registry of Deeds as Document #642, at Book 35153 and Page 215.

30. To perfect its interests in other property of the Defendants, the Lender caused the following UCC-1 Financing Statements (collectively, the "<u>Financing Statements</u>") to be filed identifying BI 40 LLC as the secured party of record: (i) Delaware Department of State, Filing No. 20192324890 for debtor EC Tewksbury LLC; (ii) Secretary of the Commonwealth of Massachusetts, Filing No. 201954303320 for debtor EC Tewksbury LLC; (iii) Secretary of the Commonwealth of Massachusetts, Filing No. 201954304390 for debtor Tewksbury Holdings LLC

---

[1] The initial terms of the Forbearance Agreement required the Real Estate Defendant to pay off the Loan at its original maturity date of April 1, 2021. The Real Estate Defendant elected to extend the Forbearance Period to October 1, 2021, pursuant to section 2.4.1(2) of the Forbearance Agreement, which extended the time for Real Estate Defendant to repay the debt to Lender.

(Membership Interest); (iv) Delaware Department of State, Filing No. 20192325087 for debtor Tewksbury Holdings LLC (Membership Interest); (v) Secretary of the Commonwealth of Massachusetts, Filing No. 202073042310 for debtor Tewksbury Living Group LLC; (vi) Secretary of the Commonwealth of Massachusetts, Filing No. 20207304220 for debtor EC Senior Tewksbury Management LLC (Membership Interest); and (vii) Department of State, Filing No. 20208849517 for debtor MH Tewksbury Operating, LLC (Membership Interest).  True and accurate copies of the Financing Statements are attached hereto as **Exhibit 18**.

31. The above-described documents attached hereto as Exhibits 1 through 19 shall collectively be referred to as the "Loan Documents."

32. Pursuant to the Loan Documents, Lender holds a senior, first-priority, valid, perfected and enforceable security interest in and to all of Defendants' assets, including, without limitation the Real Estate and the Property.

**E. The Defendants' Defaults.**

33. On October 1, 2021, the Forbearance Expiration Date occurred.  Defendants failed to repay the indebtedness, causing an Event of Default under the Amended Note and Loan Agreement.  *See* Loan Agreement, Art. VIII, § 1(i) and (iii).

34. In addition, the Enrollment Moratorium by the EOEA constituted a further Event of Default under the Loan Agreement because it is having a "Material Adverse Effect" on Defendants performance and operations.  *See id.* § 1(xvi).

35. On August 13, 2021, Operator Defendant entered into that certain Agreement for Services with Eisenstein Flaherty & Associates, LLC ("EFA" and the "EFA Agreement"), whereby EFA undertook a comprehensive review of the Facility's operations and administrative systems and has worked with Meridian and Operating Defendant with the goals of: (1) completing the corrective actions identified by the EOEA following its inspections during the Summer of 2021

and any further remediation necessary to end the Enrollment Moratorium; (2) stabilizing operations; and (3) developing and implementing a plan to increase occupancy. A copy of the EFA Agreement is attached to this complaint as **Exhibit 19**.

36. On October 4, 2021, Lender sent Defendants and Guarantors written notice of the occurrence of the Forbearance Expiration Date and the Events of Default. A true and accurate copy of this notice is attached hereto as **Exhibit 20**.

37. As of the filing of this action, Defendants have failed to cure the Events of Default.

### F. Amounts Due and Owing to Lender.

38. As of this filing not less than $8,500,000.00 was due and payable to Lender under the Loan Documents, exclusive of interests, fees, costs and attorneys' fees, and other charges payable under the Loan Documents and that continue to accrue.

### G. Threats to Defendants' Operations.

39. Lender has been informed and believes that, Operator Defendant lacks the cash to pay critical vendors including those who provide food and staffing to the Facility. Lender has been further informed and believes that the Defendants do not have sufficient revenue and cash available to meet ongoing operational expenses and that the Defendants are in jeopardy of being unable to meet payroll and related tax obligations, and/or other ongoing operational expenses, unless they received additional financing from the Lender or other sources.

40. Without sufficient funding, the Defendants will be unable to improve operations as necessary to lift the Enrollment Moratorium, which is critical to increasing the census at the Facility, achieving solvency through sustainable revenues, and preserving and enhancing the value of the Property.

41. The owners of the Defendants are unable or unwilling to provide the necessary cash for Wood Haven to take the corrective actions mandated by the EOEA and improve and maintain operations.

**H. Appointment of Receiver.**

42. Upon an Event of Default under the Loan Documents, the Lender is entitled to seek the appointment of a receiver to take possession of the Property and collect and receive any income of the Property and to manage and operate the same.

43. The Mortgage provides:

> "After the occurrence of any Event of Default, and without regard to the adequacy of the security provided pursuant to this Mortgage, Mortgagee shall be entitled to the appointment of one or more receivers of the Mortgaged Property. Mortgagor hereby consents to such appointment."

*See* § 3.05. The "Mortgaged Property" includes the Real Estate, all structures and improvements therein, and all leases, rents, and other revenues in which Real Estate Defendant has an interest *See id.* Granting Clause.

44. Lease between Real Estate Defendant and Operator Defendant provides:

> "[Operator Defendant] acknowledges that one of the rights and remedies available to [Real Estate Defendant] under applicable law is to apply to a court of competent jurisdiction for the appointment of a receiver to take possession of the Premises, to collect the rents, issues, profits and income of the Premises and to manage the operation of the Premises. [Operator Defendant] further acknowledges that the revocation, suspension or material limitation of a license relating to the operation of any portion of the Premises for its intended use under the laws of the State in which the applicable Property is located will materially and irreparably impair the value of [Real Estate Defendant's] investment in the Premises. Therefore, in any of such events, and in addition to any other right or remedy of [Real Estate Defendant] under this Lease, [Real Estate Defendant] may petition any appropriate court for, and [Operator Defendant] hereby consents to, the appointment of a receiver to take possession of the applicable Property, to manage the operation of the applicable Property, to collect and disburse all rents, issues, profits and income generated thereby and to preserve or replace to the extent possible any such license and provider certification for the applicable Property or to otherwise substitute the licensee or provider thereof. . . . [Operator Defendant] hereby irrevocably stipulates to the appointment of a receiver under such circumstances and for such purposes and agrees not to contest such appointment.

*See* § 11.3.

45. The Real Estate Defendant assigned its rights under the Lease to Lender pursuant to the Assignment of Leases and Rents and the Assignment of Agreements, which expressly gives Lender the right to enforce the Real Estate Defendant's rights under the Lease by seeking the appointment of a receiver. *See* Assignment of Agreements, § 2.

46. The Staffing Defendant executed the Operator Pledge Agreement, whereby it pledged to the Lender all of its right, title, and interest in the Operator Defendant, "[a]ll rights, privileges, authority and powers . . . to manage, control, administer, and operate the business and affairs of [Operator Defendant]," and of its "authority and powers . . . attributable to its membership interests in [Operator Defendant], including, without limitation, all contact rights related thereto."

47. All conditions precedent to Lender's rights of recovery and appointment of a receiver have been performed or have occurred.

48. KCP Advisory Group, LLC ("<u>Receiver</u>") and its agents are experienced in managing and operating facilities similar to Wood Haven and are a fit and proper company to act as receiver for the Property. The Receiver does not hold any interests which would interfere with the proper performance of its fiduciary duties as a receiver and property manager in this case and is willing to so serve.

49. The preservation of the going-concern value of the Property and insuring professional property management are the principal subjects of this action. The Lender has established a right to the Property, which is presently in possession of Defendants, and that pursuant to the Loan Documents and applicable law, Lender is entitled to have a receiver appointed to manage, operate and preserve the going-concern value of the Property subject to the terms of an order of this Court.

## COUNT 1

(Breach of Contract – Against Real Estate and Operator Defendants)

50. The Lender re-alleges and incorporates paragraphs 1 through 49 as if set forth fully herein.

51. The Loan Documents are all enforceable agreements supported by valid consideration pursuant to which the Real Estate and Operator Defendants are obligated to pay certain specified amounts and perform certain obligations owed to Lender.

52. The Real Estate and Operator Defendants have failed to pay all amounts owed under the Amended Note and Loan Agreement and otherwise perform their obligations under the Loan Documents in breach of these agreements.

53. As a result of the Real Estate and Operator Defendants' breaches, the Lender has suffered significant actual damages, which damages are ongoing, and have incurred and continue to incur, significant costs, fees and expenses, including attorneys' fees, which the Lender is entitled to recover from the Defendants.

## COUNT 2

(Appointment of Receiver – Against All Defendants)

54. The Lender re-alleges and incorporates paragraphs 1 through 53 as if fully set forth herein.

55. This Court has jurisdiction under its general equity powers to appoint a receiver over the Defendants to provide for the conservation of assets and other appropriate purposes at the instance of a creditor. *See Capital Finance, LLC, et al. v. 22 Maple Street, LLC*, 295 F. Supp. 3d 19, 23 (D. Mass. 2018); Fed. R. Civ. P. 66.

56. Lack of operating funds combined with management challenges and a showing of "imminent danger" that property will be "lost, concealed, injured, diminished in value, or

squandered" is sufficient to justify the appointment of a receiver. *See Capital Finance*, 295 F. Supp. 3d at 23 (*quoting Chase Manhattan Bank, N.A. v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26-27 (1st Cir. 1982).

57. As alleged herein, the Lender has a valid claim against the Real Estate and Operator Defendants, there are assets applicable to the payment of such claim, and the circumstances are such that to deny the request to appoint a receiver would lead to a wasting and loss of property which otherwise might be made available for the payment of the Defendants' debts.

58. Pursuant to the Operator Pledge Agreement with the Staffing Defendant, the Lender has the contractual right to foreclose upon all the Staffing Defendants' equitable and economic interests in the Operator Defendant. The Lender seeks the appoint of the Receiver to take possession and control of the Staffing Defendant's property to the extent necessary to ensure a smooth transition of all of Wood Haven's operations, thereby ensuring that the Receiver has all necessary and sufficient authority to pay the wages of the individuals whom the Staffing Defendant currently employs at the Facility and assume and exercise any other managerial, contractual, or other legal rights related to the Operator Defendant that the Staffing Defendant currently holds.

59. The Defendants do not have the resources to operate the Facility and protect the Property from waste and loss. The Defendants have defaulted on the Loan, have failed not operated the Facility in compliance with the Regulations, and have not timely paid critical vendors for goods and services necessary to Wood Haven's ongoing operations.

60. Unless a receiver is immediately appointed: (i) the health, safety, and welfare of Wood Haven's residents is likely to be negatively affected; (ii) the Operator Defendant will fail to complete the corrective actions the EOEA has required as conditions precedent to ending the Enrollment Moratorium; and (iii) the value of the Real Estate and Property may decline significantly.

61. Given the Defendants' defaults under the Loan, lack of success in managing the Facility, and lack of sufficient liquidity, the immediate appointment of a receiver by this Court is necessary to protect Wood Haven's residents, preserve the Property, and marshal the Defendants' assets to pay their creditors.

62. The Lender respectfully requests that the Court appoint KCP Advisory Group LLC by and through Paul Valentine ("Mr. Valentine"), its Senior Managing Director, as the Receiver in this action. KCP has indicated that it is prepared to serve immediately upon appointment by this Court.

63. Mr. Valentine has extensive experience in corporate restructuring and has served as a receiver of numerous skilled nursing, assisted living and independent living facilities. Mr. Valentine is currently the Crisis Management Lead, for the Commonwealth of Massachusetts COVID-19 Nursing Facility Command Team. With a formal education in accounting and finance, he has broad experience helping corporations improve their performance. Lender believes KCP and Mr. Valentine have the experience and expertise to be appointed and serve as the Receiver in this action.

64. A summary of KCP's experience and qualifications and Mr. Valentine's resume as provided by KCP to Lender, which illustrates KCP's suitability to serve as Receiver by virtue of its experience, is attached hereto as **Exhibit 21**.

**WHEREFORE**, the Lender respectfully requests that judgment be entered in its favor against the Defendants, and that the Court grant it the relief request above, including:

a) Entering judgment in favor of Lender and against the Real Estate and Operator Defendants, jointly and severally, in the amount of not less than $8,500,000, and, in addition, prejudgment and post-judgment interest, costs, expenses, attorneys' fees, and all other amounts to which Lender may be entitled;

b) Entering an order appointing the Receiver;

c) Award Lender all costs and collection, including reasonable attorneys' fees incurred by Lender; and

d) Grant Lender such other and further relief as the Court deems just and proper.

Respectfully submitted,

BI 40 LLC

By Its Attorneys,

/s/ *David A. Mawhinney*
Mark W. Powers (BBO# 555337)
David A. Mawhinney (BBO# 681737)
BOWDITCH & DEWEY LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
Tel: (508) 926-3427
Fax: (508) 929-3040
Email: mpowers@bowditch.com
dmawhinney@bowditch.com

Dated: November 24, 2021

## VERIFICATION OF COMPLAINT

I, Daniel Stahl, Manager of Lender, BI 40 LLC, have read the factual allegations set forth in the foregoing Complaint and certify that the facts stated therein are true based upon my personal knowledge and my knowledge of records which Lender maintains in the ordinary course of its business, except where stated upon information and belief, which facts I believe to be true.

Signed under the pains and penalties of perjury this 24th day of November, 2021.

_____
Daniel Stahl
Manager, BI 40 LLC

## INDEX OF EXHIBITS

| Exhibit | Document |
| --- | --- |
| 1 | Lease Between EC Tewksbury, LLC as Landlord and Tewksbury Living Group, LLC as Tenant. |
| 2 | Promissory Note dated March 29, 2019. |
| 3 | Loan Agreement between EC Tewksbury LLC and BI 40 LLC dated March 29, 2019. |
| 4 | Mortgage, Assignment of Leases and Rents, and Security Agreement between EC Tewksbury LLC and BI 40 LLC dated March 29, 2019. |
| 5 | Assignment of Leases and Rents between EC Tewksbury LLC and BI 40 LLC dated March 29, 2019. |
| 6 | Assignment of Agreements Affecting Real Estate between EC Tewksbury LLC and BI 40 LLC dated March 29, 2019. |
| 7 | Assignment and Subordination of Management Agreement between EC Tewksbury LLC, Tewksbury Living Group LLC, and BI 40 LLC dated March 29, 2019 together with Management Agreement between Meridian Senior Living and Tewksbury Living Group LLC. |
| 8 | Subordination, Non-Disturbance and Attornment Agreement between Tewksbury Living Group LLC and BI 40 LLC dated March 29, 2019. |
| 9 | Limited Guaranty between Meridian Senior Living, LLC, David Scharf, and BI 40 LLC dated March 29, 2019. |
| 10 | Pledge Agreement between Tewksbury Holdings, LLC and BI 40 LLC dated March 29, 2019. |
| 11 | Subordination Agreement between Tewksbury Holdings, LLC and BI 40 LLC dated March 29, 2019. |
| 12 | Forbearance Agreement between EC Tewksbury, LLC, David Scharf, Meridian Senior Living, LLC, Tewksbury Holdings, LLC, Tewksbury Living Group, LLC and BI 40 LLC dated December 14, 2020. |
| 13 | Amended and Restated Promissory Note dated December 14, 2020. |
| 14 | First Amendment to Mortgage, Assignment of Leases and Rents, and Security Agreement between EC Tewksbury LLC and BI 40 LLC, dated December 14, 2020. |

| 15 | Security Agreement between Tewksbury Living Group, LLC and BI 40 LLC dated December 14, 2020. |
| --- | --- |
| 16 | Pledge Agreements by MH Tewksbury Operating LLC and EC Senior Tewksbury Management LLC in favor of BI 40 LLC dated December 14, 2020. |
| 17 | Deed-in-Lieu of Foreclosure with respect to 2580 Main Street, Tewksbury, Massachusetts. |
| 18 | UCC-1 Financing Statements. |
| 19 | Notice of Default and Forbearance Expiration Date dated October 4, 2021. |
| 20 | Agreement for Services between Eisenstein Flaherty & Associates, LLC and Tewksbury Living Group, LLC dated August 13, 2021. |
| 21 | Resume of Paul Valentine. |